J-S10028-26                    2026 PA Super 148

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| FRANKLIN JAMES WARFEL | : | No. 1118 MDA 2025 |
| | : | |

Appeal from the PCRA Order Entered July 15, 2025
In the Court of Common Pleas of York County Criminal Division at No(s):
CP-67-CR-0004510-2019

BEFORE:  DUBOW, J., BECK, J., and BENDER, P.J.E.

OPINION BY BECK, J.:                    **FILED: JULY 13, 2026**

The Commonwealth of Pennsylvania appeals from the July 15, 2025 order entered by the York County Court of Common Pleas granting the petition filed by Franklin James Warfel ("Warfel") pursuant to the Post Conviction Relief Act ("PCRA").[1]  The PCRA court granted relief based upon its finding that trial counsel's ineffectiveness caused Warfel to not accept a plea offer and go to trial where, after a guilty verdict, he received a harsher sentence than that offered in the plea he rejected.  After careful review, we affirm but remand with instructions.

---

[1] 42 Pa.C.S. §§ 9541-9546.

A full recitation of the facts is unnecessary to our review.[2]  Briefly, in 2019, Warfel touched the breasts, vagina, and buttocks of his ex-fiancé's then-ten-year-old daughter as she awoke from a nap.  The Commonwealth charged him with aggravated indecent assault of a child, aggravated indecent assault (complainant less than 13 years old), indecent assault (complainant less than 13 years old), and corruption of minors.[3]

Of relevance here, Warfel and trial counsel[4] attended a pretrial call of the list hearing on November 5, 2020, at which the Commonwealth placed on the record an offer for Warfel to plead guilty to indecent assault (complainant less than 13 years old), with a recommended sentence of three and one-half to seven years of imprisonment ("Plea Offer").  N.T., 11/5/2020, at 2.  The Commonwealth also noted on the record that if Warfel proceeded to trial and was found guilty, he faced a mandatory sentence of ten to twenty years of imprisonment (the "Mandatory Minimum") for aggravated indecent assault of a child.  *Id.*  Trial counsel confirmed the Commonwealth's statements,

---

[2] This Court set forth the trial court's recitation of the facts in our memorandum decision affirming Warfel's judgment of sentence. ***Commonwealth v. Warfel***, 273 A.3d 1058, **1-2 (Pa. Super. 2022) (non-precedential decision) (quoting Trial Court Opinion, 5/11/2021, at 1-4).

[3] 18 Pa.C.S. §§ 3125(b), 3125(a)(7), 3126(a)(7), 6301(a)(1)(i).

[4] Warfel was first represented by Attorney Elizabeth Pasqualini ("first trial counsel") until Attorney Michael Marinaro ("trial counsel") entered his appearance on September 11, 2020, approximately two months before trial. Trial counsel represented Warfel through sentencing.

indicated that he and Warfel discussed the offer, that Warfel rejected it, and that he elected to proceed to trial. *Id.* at 3.

On November 12, 2020, a jury convicted Warfel of all charges. The trial court ordered a presentence investigation ("PSI") report and held a sentencing hearing on February 24, 2021. Of relevance here, at the sentencing hearing, trial counsel provided background on Warfel and confirmed that he reviewed the sentencing guidelines with Warfel, but mistakenly stated that the aggravated indecent assault of a child "would call for five and a half years; and the mitigated, it would bring it down to four and a half years of incarceration." N.T., 2/24/2021, at 5. The trial court corrected him, stating that it wanted "to make sure before we proceed that [Warfel] understands that the mandatory sentence I have to impose today is 10 to 20 years. Does he understand that?" *Id.* at 6. Trial counsel answered:

> [TRIAL COUNSEL]: I explained to him – he did ask about whether or not there was any type of exception, and in the federal system there are exceptions; if you are going to be cooperating and things like that, to take off the mandatory minimum, but – judges can vary from the sentencing guidelines, which was told to him, but they can't sentence below the mandatory minimums except in very limited circumstances.

*Id.* The trial court sentenced him to the mandatory minimum sentence for aggravated indecent assault of a child of ten to twenty years of imprisonment followed by three years of probation.[5] The remaining convictions merged for

---

[5] *See* 42 Pa.C.S. §§ 9718(a)(3), 9718.5(a).

sentencing purposes. Warfel timely appealed and this Court affirmed his judgment of sentence on February 22, 2022. **Warfel**, 273 A.3d at **1-2. Warfel did not seek further review by our Supreme Court.

On November 30, 2022, Warfel filed a timely pro se PCRA petition. The PCRA court appointed counsel who, after multiple extensions of time, filed an amended petition on June 6, 2024. The amended petition raised a claim of ineffective assistance of trial counsel. Specifically, Warfel claimed that trial counsel failed to advise or erroneously advised him as to the applicable sentencing guidelines, the Mandatory Minimum sentence he faced if convicted, and that his minimum sentence would not be more than five years of imprisonment. Amended PCRA Petition, 6/6/2024, ¶¶ 19-51. He asserted that he relied on such advice when he rejected the Commonwealth's Plea Offer and chose to proceed to trial. **Id.** Warfel sought an order directing the Commonwealth to reoffer him the Plea Offer or, in the alternative, a new trial. **Id.** at 12 (unpaginated).[6]

On October 24, 2024, the PCRA court permitted PCRA counsel to withdraw and appointed new PCRA counsel. The PCRA court held an evidentiary hearing on November 22, 2024, at which Warfel and trial counsel testified. When asked about his goals for resolving his case, Warfel testified:

_____

[6] PCRA counsel investigated the remaining claims Warfel raised in his pro se petition and determined they did not have merit. Amended PCRA Petition, 6/6/2024, ¶ 52.

"I wanted to avoid going through a trial. I wanted to make a deal, plea deal, to avoid extra time and money spent on the case and to avoid having the victim testify and put family and friends through all that." N.T., 11/22/2024, at 6. He confirmed that he knew of the Commonwealth's Plea Offer and rejected it because first trial counsel advised him that it was "a ridiculous offer and [he] would get a much better offer, so she wasn't entertaining that." *Id.* at 7.

When Warfel changed counsel, trial counsel similarly advised him not to take the plea offer and that he would get a better offer, "there was no substance to the case," the case "would be easily won," and it would probably result in a mistrial. *Id.* at 7, 15-16. Warfel testified that he "did not know what a good offer was" and "was just going by what [his] attorneys' recommendations were." *Id.* at 7.

Regarding the Mandatory Minimum sentence for aggravated indecent assault of a child, Warfel testified that he discussed sentencing with trial counsel before trial:

> I was told that there was sentencing guidelines and it was anywhere from 3-1/2 to 10. Because they were saying there was a mandatory 3-1/2 to 7 and mandatory of 5 to 10, and they were saying that the 5 years would have been – I would be out in 5 years. That would be if I would actually be convicted if I went through a trial, which that was not the plan to ever, ever go through a trial.

*Id.* at 8. Warfel further explained that trial counsel told him that "judges can vary – will vary from those guidelines depending on your history and

background and all that and the circumstance." *Id.* at 8. Warfel testified that he elected to go to trial because trial counsel advised him that "there was no substance to the case," "it would actually end up being dropped and not followed through with," it would result in a mistrial, and incriminating text messages would not come into evidence. *Id.* at 8-9. Warfel further testified that when the trial court admitted the text messages into evidence at trial, trial counsel told him that it was "against the law" and was "automatic grounds for appeal," which Warfel understood to mean he "wouldn't even go into prison right away" and that "even if this trial would be lost somehow, [he] would just say [he's] appealing it and it would go back to restart." *Id.* at 10. He also testified to being "in major shock" when he learned at trial, through one of the jury instructions, that he could be convicted based solely on the victim's testimony. *Id.*

Had he realized these misunderstandings, he testified that he would have accepted the plea offer "in a heartbeat" and "wouldn't have even thought twice." *Id.* at 10-11.

Warfel confirmed that trial counsel reviewed his PSI report with him the night before sentencing and testified that trial counsel was "shocked that they recommended ten years" and had expected a recommendation of five years. *Id.* at 12. Warfel had the same expectation as trial counsel: "That's what I was expecting them to recommend as well, being the fact that I lost a trial and was convicted and not taken the plea deal. So [trial counsel] said it was

a 10-year sentence instead of 5." *Id.* Warfel said trial counsel advised him: "[M]aybe you'll still get the 5, the judge can deter from the recommendation because it is only just a recommendation. The judge has the ultimate choice in that sentencing." *Id.* Warfel also testified that trial counsel said he would bring up "exceptional circumstances" at the sentencing hearing. *Id.* at 13. Warfel testified to misunderstanding his sentence as follows:

> I thought the 10 years – when I was sentenced to 10 years, even coming into incarceration, I thought 10 years meant 10 years and it's over, not actually 20-year sentence. Realistically, it's a 20-year sentence, you're just eligible to leave after 10 years. It's still a long 20-year sentence. I was told that those guideline[s] range, you would be sentenced to a low based on your history or you can be sentenced to a higher. So when I heard a mandatory minimum 5 to 10, I heard, okay, you might get a sentence of 5, might get a sentence of 6 or 7. If you're sentenced to 7 of it, you might get out on parole in 5, I mean get out at 5 for good behavior and be done at 7. I didn't understand that that was – the end number is the actual true sentence, not just a guideline range of what you could get sentenced at, which is what it was being explained to me by [trial counsel].

*Id.* at 13-14.

On cross-examination, Warfel reiterated that trial counsel told him "not to worry about the sentencing guideline ranges" and to reject the Plea Offer because it was "not acceptable" and "there would be a better offer" made by the Commonwealth. *Id.* at 15-16. Although Warfel agreed that the Commonwealth "formed the words" of giving him notice of the Mandatory Minimum sentence, he maintained that he "was not educated on what that actually really meant." *Id.* at 16. He testified to his belief that ten to twenty years meant the Commonwealth could ask for a sentence with that "high

number" but it would not be what he "would actually end up getting." *Id.* When asked why he did not ask questions of the prosecutor or trial court at the call of the list hearing, he explained that he "was just listening to [trial counsel] and what he was saying to do at the moment." *Id.* at 17.

Trial counsel testified that he had been practicing criminal law for thirty-one years in Pennsylvania, represented Warfel before trial and through sentencing, and "remember[ed] the case very well." *Id.* at 18, 28. He testified that he relayed the Plea Offer to Warfel and that if Warfel went to trial and was convicted, he would receive "a mandatory minimum of 10 years, and that it would be non-discretionary." *Id.* at 19, 31; *see also* Ex. C-1 (email from prosecutor to trial counsel stating Warfel is subject to a Mandatory Minimum ten-to-twenty-year sentence and offering to discuss a plea bargain on count two, aggravated indecent assault (complainant less than 13 years old)). When asked to confirm whether he had a conversation with Warfel regarding the non-discretionary nature of the Mandatory Minimum sentence, trial counsel responded as follows:

> Warfel did not want to take a plea at all. This particular case, as you know, involved a 10-year-old child that was living in his home. He admitted that he cuddled the child. He denied absolutely that he digitally penetrated the child. Where the digital penetration is where the 10-year mandatory sentence is going to kick in. He claim[ed] that he just cuddled the child. And therefore, the only thing that he would be guilty of would be the corruption of a minor. And that was his – he was steadfast with that particular way on going with this trial.

*Id.* at 20. Trial counsel recalled reviewing the PSI report with Warfel and in particular, the ten-to-twenty-year sentence recommended by the PSI officer. *Id.* at 20-21. Trial counsel acknowledged the report included guideline ranges and minimum and maximum sentences for Warfel's convictions. *Id.* at 21-23. He confirmed the report showed Warfel told the PSI officer that he was "begging for mercy on sentencing" and "hope[d] that some rehabilitation can be a part of his sentence and he [was] willing to be on house arrest forever because he has nothing to hide." *Id.* at 23-24, Ex. D-1 (PSI Report) at 11 (pagination supplied). Trial counsel agreed at the PCRA hearing that this sentence was not possible. *Id.* at 24.

The PCRA court admitted the notes of testimony from the sentencing hearing; trial counsel conceded that his argument at the sentencing hearing about the sentencing guidelines and exceptions to mandatory federal sentences had "[n]o relevancy at all." *Id.* at 27-28; *see also* Ex. D-4 (N.T., 2/24/2021 (Sentencing)).

On cross-examination, trial counsel testified that he told Warfel that "a mandatory sentence is a sentence in which it's pretty much out of the discretion of the judge. She has to follow through with what the mandatory minimum sentence is, except in those certain circumstances where a witness is cooperating. And I did cite federal law, things to that effect, they can deviate." *Id.* at 31-32. Trial counsel reiterated that Warfel did not have questions about the mandatory sentence. *Id.* at 32. Trial counsel recounted

that Warfel said that "he cuddled the 10[]year old, he shouldn't have done that, he's guilty of corruption of a minor but not any of the other offenses whatsoever," and "he was adamant about going to trial." *Id.* Finally, trial counsel noted that Warfel was "quite bright." *Id.*

The PCRA court found Warfel testified credibly that he did not want to go to trial. PCRA Court Opinion, 7/15/2025, at 15. It further found credible Warfel's testimony that "he followed the advice of trial counsel" and that "the record demonstrated to [the PCRA court] that trial counsel was incapable of providing sound advice based upon his clear misapprehension of the law." Pa.R.A.P. 1925(a) Opinion, 10/9/2025, at 6. It granted the amended petition on July 15, 2025, finding trial counsel "ineffective for failing to provide accurate information to [Warfel] about the mandatory sentence, which [he] relied upon to his detriment. PCRA Court Opinion, 7/15/2025, at 8. It ordered the Commonwealth to reoffer to Warfel the Plea Offer. The Commonwealth timely appealed. The Commonwealth filed a concise statement of errors pursuant to Rule 1925(b) of our Rules of Appellate Procedure, and the PCRA court issued a Rule 1925(a) opinion, which expounded on and attached its July 15, 2025 opinion.[7]

_____

[7] On September 10, 2025, the PCRA court granted Warfel bail pending appeal. That same date, the Commonwealth filed in this Court an application for relief, which this Court treated as a petition for specialized review pursuant to Rule 1610 of our Rules of Appellate Procedure (relating to review of bail orders) and transferred the petition to this Court's miscellaneous docket at
*(Footnote Continued Next Page)*

The Commonwealth presents two issues for our review:

I.      Whether [t]he PCRA [c]ourt erred in finding that [trial] counsel was ineffective specifically as to the prejudice prong of the ineffective assistance test as a matter of law[,] where [Warfel] was informed at the 11/5/2020 [pretrial call of the list] hearing of both the offer that had been made, the mandatory sentence [Warfel] was facing, and [trial] counsel expressly confirmed the Commonwealth's recitation and [Warfel's] rejection.

II.     Whether [t]he PCRA [c]ourt erred in finding that [trial] counsel was ineffective as to all three prongs of Pennsylvania's ineffective assistance test regarding [Warfel's] being not informed of the mandatory sentence he faced if he took the case to trial.

Commonwealth's Brief at 8 (footnote and suggested answers omitted).

The following legal standards are applicable to this appeal. "When reviewing a court's decision regarding PCRA relief, we are limited to determining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." **Commonwealth v. Pacheco**, 340 A.3d 1038, 1041 (Pa. Super. 2025) (quotation marks and citation omitted). "Further, we view the findings of the PCRA court and the evidence of record in a light most favorable to the

_____

58 MDM 2025. On September 17, 2025, the Commonwealth filed in this Court an amended petition for stay of bail pending the instant appeal. On October 3, 2025, this Court granted that petition pending resolution of the Commonwealth's petition for specialized review. On October 7, 2025, this Court vacated the PCRA Court's September 10, 2025 bail order without prejudice to Warfel's right to reapply to the PCRA court for bail pending appeal and present information regarding his adjustment since incarceration and his treatment status and needs implicating his eligibility for parole.

- 11 -

prevailing party." *Id.* (quotation marks and citation omitted). "We employ a de novo review of the PCRA court's legal conclusions." *Id.* (citation omitted). "Its credibility determinations and factual findings that are supported by the record, however, are binding upon us on appeal." *Id.* (quotation marks and citation omitted). As we have recognized, "[t]he credibility determinations are to be provided great deference, and indeed, they are one of the primary reasons PCRA hearings are held in the first place." *Commonwealth v. Rizor*, 304 A.3d 1034, 1058 (Pa. 2023) (quotation marks, brackets omitted, and citations omitted). "Given that the PCRA court, as fact-finder, has the opportunity to listen to witnesses, to observe their demeanor and attitude, we have stated that there is no justification for an appellate court, relying solely upon a cold record, to review the fact-finder's first-hand credibility determinations." *Id.* (quotation marks and citation omitted).

The Commonwealth's claims on appeal challenge the PCRA court's finding that trial counsel was ineffective. In conducting our review, we are mindful of the well-settled law:

> [T]o obtain relief based on an ineffective assistance of counsel claim, a petitioner must establish: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) petitioner suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

*Commonwealth v. Steckley*, 128 A.3d 826, 831 (Pa. Super. 2015) (citations, quotation marks, and some brackets omitted). "Trial counsel is

- 12 -

presumed to be effective, and a PCRA petitioner bears the burden of pleading and proving each of the three factors by a preponderance of the evidence." *Id.*

With respect to the first prong, "a claim has arguable merit where the factual averments, if accurate, could establish cause for relief. Whether the facts rise to the level of arguable merit is a legal determination." *Commonwealth v. King*, 259 A.3d 511, 520 (Pa. Super. 2021) (citation and quotation marks omitted).

To satisfy the second prong of the ineffectiveness test, a petitioner must establish that "no competent counsel would have chosen that action or inaction, or, the alternative, not chosen, offered a significantly greater potential chance of success." *Id.* (citation and quotation marks omitted). "Counsel's decisions will be considered reasonable if they effectuated his client's interests. We do not employ a hindsight analysis in comparing trial counsel's actions with other efforts he may have taken." *Id.* (citation and quotation marks omitted).

To establish prejudice, the petitioner must show "a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 521 (citation and quotation marks omitted). "In the context of a plea offer rejected by a defendant, the defendant 'must show the outcome of the plea process would have been

- 13 -

different with competent advice.'" **Rizor**, 304 A.3d at 1054 (quoting **Lafler v. Cooper**, 566 U.S.156, 163 (2012)).

In addition, when a post-conviction petitioner seeks relief based on a claim that ineffective assistance of counsel caused him to reject a plea bargain, the petitioner must show the following to satisfy the prejudice prong:

> But for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.

**Steckley**, 128 A.3d at 832 (brackets omitted) (quoting **Lafler**, 566 U.S.at 164). A petitioner may satisfy his burden of showing he would have accepted the plea offer but for his counsel's ineffectiveness with his own self-serving statement as long as the PCRA court finds the petitioner's testimony to be credible. **Steckley**, 128 A.3d at 832 (quotation marks omitted). "[W]here a petitioner's testimony is credible and uncontradicted, it may suffice to establish a reasonable probability that the petitioner would have accepted the prosecution's plea offer." **Id.** at 832-33.

We address the Commonwealth's issues together as they both relate to trial counsel's effectiveness regarding advising Warfel about the Mandatory Minimum sentence he faced if convicted after trial. **See** Commonwealth's Brief at 11-29. The Commonwealth maintains that Warfel failed to demonstrate all three prongs of the ineffectiveness test. **Id.** The crux of the Commonwealth's

argument is that Warfel's notice at the pretrial call of the list hearing of the Plea Offer and the Mandatory Minimum precludes any relief. *Id.* We review its argument as to each prong individually.

Beginning with the question of arguable merit, the Commonwealth points to the pretrial call of the list transcript[8] showing Warfel had notice of the Plea Offer and Mandatory Minimum, as well as trial counsel's testimony at

_____

[8] The pretrial call of the list hearing transcript provided as follows:

> [PROSECUTOR]:  Your Honor, [the] next matter is Commonwealth v. Franklin Warfel, Case No. 4510 of 2019.  [Warfel] is present, represented by counsel.  Here for Call of the List.  This case is set for a date certain trial, beginning Monday morning. Commonwealth is prepared to move forward.
>
> I would just note for the record that the Commonwealth extended an offer on Count 2[, aggravated indecent assault (complainant less than 13 years old),] bottom of the standard range, which is three and a half to seven years.  Should [Warfel] be found guilty, he has a mandatory sentence in this case, which is 10 to 20 years [for an aggravated indecent assault of a child conviction].   The Commonwealth would be seeking that mandatory should [Warfel] be found guilty.
>
> *      *      *
>
> THE COURT:  Okay.  Well, you heard the offer.  I assume you're telling me that because your client rejected it?
>
> [TRIAL COUNSEL]:  Yes, Your Honor.  Everything that was said by the [prosecutor] is actually correct.  My client is here.  We sat down and we talked about the offer, three and a half to seven years of incarceration, plus lifetime Megan's Law.  He rejected that and he would like to proceed to trial.

N.T., 11/5/2020, at 2-3.  The PCRA court took judicial notice of this portion of the transcript at the PCRA hearing.  N.T., 11/22/2024, at 15.

the PCRA hearing that Warfel wanted to proceed to trial. *Id.* at 18-19. Although it concedes trial counsel was "ill-prepared" at Warfel's sentencing hearing, it contends this was irrelevant to Warfel's decision to go to trial because trial counsel "did discuss the case with [Warfel] at the time of trial preparations." *Id.* at 20.

The PCRA court found that Warfel's ineffective assistance of counsel claim had arguable merit, citing this Court's decision in *Steckley*. PCRA Court Opinion, 7/15/2025, at 9-13. In *Steckley*, the Commonwealth presented the defendant with two plea offers—a recommendation of three to six years of imprisonment and then a recommendation of two to six years—but he declined both because they "didn't make sense to him" in light of a sentencing guideline worksheet provided by the Commonwealth indicating a standard range sentence was nine to sixteen months. *Steckley*, 128 A.3d at 830. After a guilty verdict and before sentencing, the Commonwealth provided notice of its intent to seek imposition of a mandatory minimum sentence of twenty-five years of imprisonment, which the trial court ultimately imposed. *Id.* at 829-30. At a PCRA hearing, Steckley's trial counsel testified that she was unaware of the mandatory minimum sentence and would have advised him differently had she known. *Id.* at 830. Steckley testified that if he had known about the mandatory sentence, he would have accepted the plea offer. *Id.* The PCRA court granted his petition. *Id.*

On appeal, this Court focused on the prejudice to Steckley as the Commonwealth only challenged that prong. *Id.* at 831. Applying the test set forth in *Lafler*, delineated above, we discerned no error in the PCRA court's conclusion that Steckley showed a reasonable probability that, had he accepted the plea offer, he would have received a less severe sentence than what he received following trial. *Id.* at 835. This Court affirmed and remanded with instructions for the lower court to resentence Steckley according to the plea bargain he had rejected. *Id.* at 837.

In granting Warfel relief, the PCRA court recognized the conflict between Warfel's testimony that he wanted to avoid trial and trial counsel's testimony that Warfel was adamant about going to trial, but observed that the conflict was not dispositive as Warfel could have elected to go to trial based on a misunderstanding of his maximum exposure. PCRA Court Opinion, 7/15/2025, at 10-11. As noted above, it specifically found Warfel testified credibly that he did not want to go to trial. *Id.* at 15. The PCRA court also questioned trial counsel's testimony that he remembered the case very well, noting he repeatedly misgendered the trial prosecutor. *Id.* at 10.

Examining what it called "the critical question" of why Warfel elected to proceed to trial, the PCRA court was "unconvinced [Warfel] understood the ramifications of the mandatory sentence at issue." *Id.* at 10-11. It pointed to his statements in his PSI report where he begged for mercy as to sentencing and was amenable to lifetime house arrest; trial counsel's "repeated reference

- 17 -

to federal judges and their supposed ability to deviate from mandatory sentencing" despite his admission at the PCRA hearing that it was irrelevant to Warfel's sentencing; the "substantial disparity" between the Plea Offer and the Mandatory Minimum; and Warfel's uncontested testimony that he relied upon the advice of counsel to reject the plea offer as "stingy," which the PCRA court found "was buttressed by trial counsel's confusing and repeated appeals to his understanding of federal sentencing authority vis-à-vis the mandatory sentence." *Id.* at 11-12.

The PCRA court acknowledged that Warfel received notice of the Mandatory Minimum at the call of the list hearing, but observed that the hearing did not have any "direct address, by the defense or the presiding judge, of the mandatory sought by the Commonwealth." *Id.* at 12. Further, the PCRA court found that trial counsel's "statements during sentencing evidenced that perhaps he thought that he could argue for something less than mandatory." *Id.* (citation omitted). It also noted trial counsel's failure to directly respond at the PCRA hearing about whether he discussed with Warfel the non-discretionary nature of the Mandatory Minimum. *Id.* at 13. The PCRA court recognized that, unlike *Steckley*, trial counsel did not testify that he was unaware of the Mandatory Minimum sentence, but concluded, based on the foregoing evidence, that trial counsel failed to "accurately apprise [Warfel] of the import of the Commonwealth's invocation of the sentencing mandatory," and that his claim thus had arguable merit. *Id.*

The certified record supports the PCRA court's factual findings and credibility determinations, and we are therefore bound by them and cannot disturb them on appeal. *See Pacheco*, 340 A.3d at 1041; *Rizor*, 304 A.3d at 1058. In conducting our review in the light most favorable to Warfel as the prevailing party, the record supports the PCRA court's finding that Warfel's claim—that he rejected the Plea Offer because of trial counsel's deficient and misleading advice regarding the Mandatory Minimum sentence and later received a harsher sentence—can establish a cause for relief. *See Pacheco*, 340 A.3d at 1041; *King*, 259 A.3d at 520; *Steckley*, 128 A.3d at 831, 837.

Turning to whether Warfel's counsel had a reasonable basis for his actions, the Commonwealth contends that trial counsel's actions were reasonable, once again relying on the fact that Warfel received notice of the Plea Offer and Mandatory Minimum at the call of the list hearing. Commonwealth's Brief at 20-26. It also argues that Warfel did not preserve in his amended PCRA petition a claim that trial counsel was ineffective for failing to advise him that he could be convicted based solely on the victim's testimony, though it recognizes the PCRA court admitted evidence of Warfel's lack of this knowledge for the limited purpose of understanding his decision-making process of whether to go to trial. *Id.* at 21-23. The Commonwealth contends that Warfel failed to meet his burden because he did not question trial counsel at the hearing as to whether he informed Warfel of the possible jury instruction relating to a conviction based on the victim's testimony alone.

*Id.* at 25-26. Finally, the Commonwealth concedes trial counsel's negligence at the sentencing hearing but accuses the PCRA court of being distracted by this "red herring." *Id.* It maintains that despite trial counsel's negligence at sentencing, Warfel did not meet his burden for the second prong. *Id.* at 26.

The PCRA court found the alternative not pursued here, i.e., accepting the Plea Offer, "unquestionably offered a substantially greater chance of success," as it would have "drastically limited his exposure." PCRA Court Opinion, 7/15/2025, at 13-14. The PCRA court recounted its findings relating to trial counsel's misapprehension of the law at the sentencing hearing and found it was not clear that trial counsel "fully appreciated the lack of discretion [the trial court] had at sentencing." *Id.* As a result, it found trial counsel's actions lacked a reasonable basis. *Id.*

We are again bound by the PCRA court's factual findings and credibility determinations as they are supported by the certified record. *See Pacheco*, 340 A.3d at 1041; *Rizor*, 304 A.3d at 1058. Further, we reject the Commonwealth's "red herring" argument, as the record plainly demonstrates that trial counsel misadvised Warfel regarding the mandatory nature of the Mandatory Minimum before trial. N.T., 11/22/2024, at 31-32. At the PCRA hearing, trial counsel remembered receiving an email from the prosecutor in September 2020, about two months before the call of the list hearing and trial. *Id.* at 31. The email indicated that the Commonwealth was open to discussing a plea on count two (aggravated indecent assault (complainant less than 13

years old)) and noted that Warfel was subject to the Mandatory Minimum sentence, which trial counsel understood to mean the charge subject to the Mandatory Minimum (aggravated indecent assault of a child) would be dismissed. *Id.* at 31, Ex. C-1. Trial counsel testified that he shared the email with Warfel and explained to him what a mandatory sentence is. *Id.* at 31. When asked what he explained to his client, trial counsel responded:

> I indicated a mandatory sentence is a sentence in which it's pretty much out of the discretion of the judge. She has to follow through with what the mandatory minimum sentence is, except those certain circumstances where a witness is cooperating. And I did cite federal law, things to that effect, they can deviate.

*Id.* at 31-32.

This provides ample support for the PCRA court's finding that "trial counsel had not fully understood or appreciated the mandator[y sentence] at issue when tendering advice to [Warfel] about the plea offer[.]" Pa.R.A.P. 1925(a) Opinion, 10/9/2025, at 5. As trial counsel recognized at the PCRA hearing, a trial court has no discretion to deviate from a mandatory minimum sentence under Pennsylvania law, which means the advice he gave to Warfel (based on federal law) was wrong. N.T., 11/22/2024, at 27-28, 31-32; 42 Pa.C.S. § 9718(d) ("There shall be no authority in any court to impose on an offender to which this section is applicable any lesser sentence than provided for in subsection (a) or to place the offender on probation or to suspend sentence."); ***Commonwealth v. Lilley***, 978 A.2d 995, 998 (Pa. Super. 2009) (observing that the "sentence for aggravated indecent assault of a child

- 21 -

represents a mandatory minimum sentence in which the sentencing court had no discretion") (citation omitted). Thus, reviewing this matter in the light most favorable to Warfel, we find no abuse of discretion in the PCRA court's determination that trial counsel's deficient advice lacked a reasonable basis designed to effectuate Warfel's interests and Warfel would have received a less severe sentence had counsel advised him to accept the Commonwealth's plea offer. *See Pacheco*, 340 A.3d at 1041; *King*, 259 A.3d at 520; *Steckley*, 128 A.3d at 831.

With respect to the prejudice prong, the Commonwealth continues to argue that Warfel's notice of the Plea Offer and Mandatory Minimum at the call of the list hearing precludes a finding of prejudice. Commonwealth's Brief at 26-29. It further contends that "notice by the prosecutor in open court prior to trial is a valid prophylactic against collateral claims where a defendant argues that he was not advised of a possible plea or mandatory sentence." *Id.* at 11 (citing *Missouri v. Frye*, 566 U.S. 134, 146 (2012)). Because the pretrial hearing transcript shows Warfel received notice of the Plea Offer and Mandatory Minimum, it maintains Warfel cannot claim prejudice. Commonwealth's Brief at 11-13.

We first address the Commonwealth's *Frye* argument. Generally, counsel has a duty to communicate a plea bargain to his client and explain the advantages and disadvantages of the offer. *Commonwealth v. Marinez*, 777 A.2d 1121, 1124 (Pa. Super. 2001); *see also Frye*, 566 U.S. at 146

("This Court now holds that, as a general rule, defense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused."). "Failure to do so may be considered ineffective assistance of counsel if the defendant is sentenced to a longer prison term than the term he would have accepted under the plea bargain." *Marinez*, 777 A.2d at 1124 (citation omitted).

In *Frye*, the defendant claimed ineffective assistance of counsel resulting from a lapsed plea bargain that offered more lenient terms than the guilty plea he later entered. *Frye*, 566 U.S. at 138. In this context, the United States Supreme Court considered "what a defendant must demonstrate in order to show that prejudice resulted from counsel's deficient performance." *Id.* In discussing the standard for counsel's performance in communicating formal plea offers, the Court first found important guidance in the codified standards of professional practice requiring prompt communication to the defendant of all plea offers. *Id.* at 145. The Court then continued:

> The prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences. First, the fact of a formal offer means that its terms and its processing can be documented so that what took place in the negotiation process becomes more clear if some later inquiry turns on the conduct of earlier pretrial negotiations. Second, States may elect to follow rules that all offers must be in writing, again to ensure against later misunderstandings or fabricated charges. Third, formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence.

*Id.* at 146-47 (citations omitted).

Instantly, the Commonwealth argues that the third measure recommended in **Frye**, placing formal offers on the record, serves as a "prophylactic" against Warfel's collateral claim of counsel's failure to advise him of the Plea Offer or Mandatory Minimum sentence. Commonwealth's Brief at 11, 13-14.

In its Rule 1925(a) opinion, the PCRA court rejected the Commonwealth's claim that placing the plea offer on the record precluded relief under **Frye**. Pa.R.A.P. 1925(a) Opinion, 10/9/2025, at 5-6. It found that trial counsel's failure to properly advise Warfel as to the correct nature of the Mandatory Minimum (i.e., that the trial court had no discretion in its implementation) prejudiced Warfel as it induced him to reject the Plea Offer and proceed to trial, where he received a much higher sentence than he would have if he had accepted the Plea Offer. **Id.** at 6; PCRA Court Opinion, 7/15/2025, at 14-15.

We discern no error. Nothing in the **Frye** decision stands for the proposition that making a formal plea offer a part of the record before trial inoculates against claims of deficient performance by counsel in communicating such offers. The **Frye** Court described what a defendant must show to establish prejudice in this context:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a

reasonable probability they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants must also demonstrate a reasonable probability the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time.

*Frye*, 566 U.S. at 147 (citation omitted).

As set forth above, this standard for prejudice is substantively the same as what the High Court pronounced in *Lafler*[9] and adopted in our Commonwealth. *Rizor*, 304 A.3d at 1054 (quoting *Lafler*, 566 U.S.at 163-64); *Steckley*, 128 A.3d at 832 (quoting *Lafler*, 566 U.S.at 164).[10]

_____

[9] *Frye* and *Lafler* were decided on the same date.

[10] In support of its "valid prophylactic" argument, the Commonwealth also relies on two non-precedential decisions of this Court: *Commonwealth v. McQueen*, 283 EDA 2024, 2024 WL 5154818 (Pa. Super. Dec. 18, 2024) (non-precedential decision), and *Commonwealth v. Jones*, 3492 EDA 2018, 2019 WL 2929059 (Pa. Super. Jul. 8, 2019) (non-precedential decision). Commonwealth's Brief at 14-15, 29. In addition to their non-precedential status, there is nothing in these decisions to suggest that simply informing a defendant of a plea offer on the record results in the wholesale preclusion of ineffectiveness claims. *See McQueen*, 2024 WL 5154818, at **9-13; *Jones*, 2019 WL 2929059, at **1-2.

Moreover, the cases are factually inopposite from the instant case. *McQueen* involved, in part, a collateral claim of ineffective assistance of counsel based on a failure to communicate a post-trial plea offer to a defendant. *McQueen*, 2024 WL 5154818, at **9-13. The defendant claimed he was not informed of the offer, whereas trial counsel testified that he communicated it to the defendant, who rejected it based on his assertion of innocence. *Id.* at *12. The PCRA court made no credibility determination as

*(Footnote Continued Next Page)*

We thus turn our analysis to the additional factors set forth in **Steckley** required to satisfy the prejudice prong for a claim that ineffective assistance of counsel caused a petitioner to reject a plea bargain. Neither the PCRA court nor the parties addressed these factors; nonetheless, the PCRA court's findings of fact and credibility determinations allow us to conduct the requisite legal analysis.

First, Warfel must show that there is a reasonable probability that he would have accepted the plea offer and the Commonwealth would not have withdrawn it in light of intervening circumstances. **See Steckley**, 128 A.3d at 832. Warfel testified that he would have accepted the plea offer. N.T., 11/22/2024, at 6, 8, 10-11. This is sufficient to satisfy his burden because the PCRA court found his testimony to be credible. **See Steckley**, 128 A.3d at 832-33; **see also** PCRA Court Opinion, 7/15/2025, at 10-12, 15. Moreover, Warfel's claimed innocence on some of the charges does not automatically defeat a later claim that he would have accepted a guilty plea offer. **See**

---

to whether trial counsel communicated the offer. **Id.** In addition, there was no evidence the defendant would have accepted the offer and he testified at the PCRA hearing that he did not know what he would have done if he had known about the offer. **Id.** at *13.

**Jones** involved an untimely PCRA petition with an underlying claim of trial counsel's failure to properly convey a plea offer. **Jones**, 2019 WL 2929059, at *2. Finding the claim could not satisfy the newly-discovered fact exception to the PCRA's time bar, this Court noted that the petitioner could not claim the plea offer was unknown to him because a pretrial hearing transcript showed he knew of the offer. **Id.**

***Steckley***, 128 A.3d at 834 (Recognizing that "[a] defendant's assertion of innocence does not necessarily belie his later claim that he would have accepted a guilty plea offer," as his claim of innocence prior to entering a guilty plea may be "to strengthen his bargaining position. Indeed, a defendant may enter a guilty plea while continuing to maintain that he is factually innocent.").

Further, the Commonwealth maintained its Plea Offer as of Thursday, November 5, 2020, at the call of the list hearing and trial began the following week. There is no indication in the record that any intervening circumstance would have caused the Commonwealth to withdraw its offer in the days between the call of the list and trial. We thus conclude that a reasonable probability exists that the Commonwealth would not have withdrawn the offer prior to the trial court's acceptance of it. ***See id.*** at 832; ***see also id.*** at 834 (stating that "the test set forth in ***Lafler*** necessarily requires courts to speculate as to what would have transpired absent trial counsel's effectiveness") (citation omitted).

Next, Warfel must demonstrate that there is a reasonable probability the trial court would have accepted the terms of the plea offer. ***See id.*** at 832. Unfortunately, the terms of the Commonwealth's proposal were never fully elucidated in the certified record. At the call of the list hearing, the Commonwealth merely indicated that it extended an offer on count two (aggravated indecent assault (complainant less than 13 years old)) with a

recommended sentence at the bottom of the standard range of three and one-half to seven years of imprisonment. N.T., 11/5/2020, at 2. Trial counsel testified that he understood the offer to be Warfel's guilty plea on count two, with a recommended sentence of three and one-half years of imprisonment, was in exchange for the dismissal of count one (aggravated indecent assault of a child), which was the only charge subject to the Mandatory Minimum.[11] N.T., 11/22/2024, at 31. The trial court gave no indication of its view on the Commonwealth's offer or that it would have accepted or rejected the negotiated sentence. As this Court stated in **Steckley**, however, "[i]t defies common sense to believe that the trial court, for no apparent reason, would have rejected the plea bargain and ordered the parties to endure a lengthy and expensive trial." **Steckley**, 128 A.3d at 835. We therefore conclude that a reasonable probability exists that the trial court would have accepted the terms of the Plea Offer. **See id.** at 832, 834-35.

For the same reason, we conclude that Warfel established that a reasonable probability exists that if he accepted the Commonwealth's plea offer, the trial court would have imposed a sentence less severe sentence than the one he received following trial. **See id.** at 832. The three and one-half

_____

[11] Although it is unclear whether the offer would result in the dismissal of the remaining charges of indecent assault (complainant less than 13 years old) and corruption of minors, this is irrelevant as they would merge for sentencing purposes. **See** N.T., 2/24/2021, at 11; 42 Pa.C.S. § 9765 (merger of sentences).

years of imprisonment that was included in the Plea Offer was far less than the ten-to-twenty-year sentence he ultimately received. **Compare** N.T., 11/22/2024, Ex. C-1; N.T., 11/5/2020, at 2 **with** 42 Pa.C.S. § 9718(a)(3).

Therefore, viewing the record in the light most favorable to Warfel as the prevailing party, we find no abuse of discretion in the PCRA court's determination that Warfel suffered prejudice as a result of trial counsel's ineffectiveness. **See Pacheco**, 340 A.3d at 1041; **King**, 259 A.3d at 520; **Steckley**, 128 A.3d at 831, 836. In the context of the Plea Offer Warfel rejected, "the outcome of the plea process would have been different with competent advice." **Rizor**, 304 A.3d at 1054 (citation omitted).

Accordingly, we affirm the PCRA court's decision granting Warfel's PCRA petition and ordering the Commonwealth to reoffer Warfel a proposed plea of three and one-half to seven years of imprisonment. **See Steckley**, 128 A.3d at 837 ("Because the court's sentencing discretion is confined by a mandatory minimum sentence, the only logical remedy to neutralize Steckley's constitutional injury is to require the prosecution to reoffer the plea proposal.") (quotation marks omitted). We remand this case to the PCRA court with instructions to resentence Warfel according to the plea bargain that he previously rejected because of trial counsel's deficient performance. **See id.** at 838 (remanding the matter for the PCRA court "to resentence Steckley according to the plea bargain that he previously rejected due to his attorney's deficient performance").

Order affirmed. Case remanded with instructions. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 7/13/2026